**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Corey Bullard, | No. CV-21-01779-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Gerald Thompson, | |
| Respondent. | |

On October 21, 2021, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (the "Petition"). (Doc. 1.) Afterward, Petitioner filed a motion for release from custody (Doc. 7) and a motion for legal determination regarding default (Doc. 15).

On March 22, 2022, Magistrate Judge Fine issued a Report and Recommendation ("R&R") concluding that the Petition should be dismissed with prejudice and that the motions should be denied. (Doc. 18.) Afterward, Petitioner filed objections to the R&R (Doc. 29) and Respondents filed a response (Doc. 30). For the following reasons, the Court overrules Petitioner's objections, adopts the R&R, and terminates this action.

I.  Background

*The Crime*. In December 2015, Petitioner and another man, Rockney Martineau, filed a fraudulent quitclaim deed with the Maricopa County Recorder. (Doc. 18 at 2-3.) An employee of the Recorder's Office suspected the deed was fraudulent because it contained abnormal punctuation, listed witnesses and personal property, was not notarized, and was written in pencil and then retraced in pen. (*Id.*) The employee contacted the police

based on her prior experience with Martineau and the irregularities in the deed. (*Id.*)

*Trial Court Proceedings*. After an investigation, Petitioner was charged with attempt to commit fraudulent schemes and artifices, illegally conducting an enterprise, and forgery. (*Id.* at 30.)

In June 2017, following a five-day trial, Petitioner was convicted as charged. (*Id,*)

On October 6, 2017, the superior court sentenced Petitioner, who had a previous felony conviction record, to concurrent terms of imprisonment, the longest of which was 20 years. (*Id.*)

*Initial PCR Proceedings*. Petitioner did not initially pursue a direct appeal. Instead, in late November 2018 or early December 2018 (*i.e.*, more than a year after sentencing), Petitioner filed a *pro se* notice of post-conviction relief ("PCR"). (*Id.* at 3-4.) The PCR notice raised claims of ineffective assistance of trial counsel, newly discovered evidence, and actual innocence. (*Id.*)

The superior court concluded that the PCR notice was untimely, granted Petitioner permission to file a delayed notice of appeal, appointed counsel to represent Petitioner on appeal, and dismissed the PCR claims because Petitioner failed "to state a claim for which relief can be granted in an untimely Rule 32 proceeding." (*Id.* at 4.)

*The Delayed Direct Appeal*. Petitioner's appointed counsel filed a delayed but timely notice of appeal as allowed by the superior court. (*Id.*) Petitioner's counsel then filed an *Anders* brief. (*Id.*) Afterward, Petitioner filed a *pro se* supplemental brief in which he argued that he had not been properly informed of the charges against him, the charges had been dismissed, the trial court lacked subject matter jurisdiction, the statutes under which had been convicted lacked enactment clauses, and he received ineffective assistance of trial counsel. (*Id.*)

On March 10, 2020, the Arizona Court of Appeals issued a memorandum decision in which it rejected Petitioner's first four arguments and stated that ineffective assistance of counsel claims may only be brought in a PCR proceeding. (*Id.*) The court of appeals also searched the record for fundamental error and found none, found that sufficient

evidence supported Petitioner's convictions, and affirmed Petitioner's convictions and sentences. (*Id.*)

Petitioner did not move for reconsideration or seek review in the Arizona Supreme Court. (*Id.*)

*The Petition*. As noted, Petitioner filed the Petition on October 21, 2021. (Doc. 1.) The Court previously construed it as raising four grounds for relief: (1) Petitioner was denied due process because the trial court did not have subject matter jurisdiction; (2) Petitioner received ineffective assistance of counsel; (3) Petitioner is actually innocent; and (4) Petitioner was denied due process of law when he was denied his right to present evidence, denied his right to "exhaust administrative remedies," denied counsel, and denied access to witnesses. (Doc. 4.)

*The R&R*. The R&R concludes the Petition should be dismissed with prejudice because it is barred by AEDPA's one-year statute of limitations. (Doc. 18 at 5-13.) The R&R begins by explaining that because "the Petition arises from a final judgment and sentence, and the record does not present circumstances for a later start date based on subsections (B), (C), or (D)" of 28 U.S.C. § 2244(d)(1), the start date for the limitations period "is determined by 28 U.S.C. § 2244(d)(1)(A)." (*Id.* at 6.) Applying § 2244(d)(1)(A), the R&R explains that "Petitioner's judgment became final on the thirtieth day after the Arizona Court of Appeals' memorandum decision of March 10, 2020," which was April 9, 2020, and the Petition therefore needed to be filed by April 12, 2021. (*Id.*) The R&R states that because the Petition was not placed in the prison mail until October 12, 2021, it "was untimely filed by six months." (*Id.* at 7.) Next, the R&R states that Petitioner is not entitled to any period of statutory tolling because he pursued PCR relief before his direct appeal. (*Id.*) Next, the R&R states that Petitioner is not entitled to any period of equitable tolling because "a petitioner's pro se status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling" and thus Petitioner's arguments regarding his pro se status and pain from nerve damages do not

suffice. (*Id.* at 7-9.) In a related vein, the R&R notes that Petitioner was able to make various other court filings during the alleged period of disability, which "undermines Petitioner's claim that his pain and pain medication during incarceration could have prevented Petitioner from filing timely federal habeas proceedings." (*Id.* at 9-10.) Finally, the R&R states that Petitioner cannot invoke the "actual innocence" gateway because (1) "it appears that all of [the] evidence to which Petitioner refers was available to Petitioner at the time of his mid 2016 jury trial and, thus, is not new evidence"; and alternatively (2) Petitioner merely offers "general assertions of actual innocence with scant explanation and support," and thus "the evidence described and presented does not persuade the Court that, in light of the new evidence, no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt." (*Id.* at 10-12, cleaned up).

Finally, with respect to Petitioner's motions, the R&R concludes as follows: (1) the motion for release should be denied because the determination that the Petition should be dismissed on untimeliness grounds necessarily means Petitioner has not shown a high probability of success; and (2) the motion for a legal determination regarding default should be denied because it "is not grounded in law applicable to these proceedings." (*Id.* at 13.)

II.     Legal Standard

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *See* Fed. R. Civ. P. 72(b)(3).

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does

not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

III. Analysis

Petitioner's objections to the R&R lack merit. One of Petitioner's arguments is that the start date for AEDPA's one-year limitations should not have been determined by 28 U.S.C. § 2244(d)(1)(A)—that is, based on when Petitioner's judgment came final—but instead should have been determined by 28 U.S.C. § 2244(d)(1)(B), which calls for delayed accrual when "State action" creates an "impediment to filing an application . . . in violation of the Constitution or laws of the United States." (Doc. 29 at 4-5 ["Under AEPDA, petitioner has submitted several circumstances for a later start date based on subsection (B) . . . ."].) Petitioner seems to identify two state actions that purportedly prevented him from filing a habeas petition: (1) "the petitioner was on locked down/controlled movement/covid protocols" that "denied his constitutional access to the court by denying him access to the necessary legal materials"; and (2) "the LexisNexis application that is a part of the petitioners [sic] electronic tablet was not effectively operative until August 2021." (*Id.*) Thus, Petitioner contends that the limitations period should not have run between August 1, 2020 and June 1, 2021. (*Id.*)

---

[1] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 457 (2021) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

- 5 -

1　　　　This argument fails for two reasons.  First, it is forfeited.  In his reply to the State's
2　limited answer, which sought dismissal based on untimeliness (Doc. 16 at 5-8), Petitioner
3　did not argue that the start date for the limitations period should be determined by
4　§ 2244(d)(1)(B) or suggest that COVID protocols or problems with his tablet interfered
5　with his ability to timely pursue relief.  (Doc. 17.)  Instead, Petitioner identified various
6　other reasons why his application should not be considered untimely.  (*Id.* at 10-13.)  In
7　the R&R, Judge Fine explained why those arguments are unavailing.  Under these
8　circumstances, the Court declines, in its discretion, to allow Petitioner to raise entirely new
9　arguments for the first time in his objections to the R&R.  *Cf. Martin v. Barnes*, 2015 WL
10　3561554, *1 (C.D. Cal. 2015) ("This Court, in its discretion, has declined to consider new
11　evidence and arguments which petitioner seeks to present for the first time in his objections.
12　Indeed, new arguments and factual assertions . . . raised for the first time in objections to
13　the report and recommendation . . . may not be deemed objections at all.  The only proper
14　purpose of an objection to an R & R is to identify a specific defect of law, fact, or logic in
15　the Magistrate Judge's analysis. . . .  An R & R cannot have analyzed an argument or
16　evidence which the objecting party failed to present prior to its issuance, so a Report's
17　'failure' to address such arguments or evidence cannot be a defect.") (cleaned up).  The
18　Court recognizes that it possesses discretion to consider a new argument in this
19　circumstance, but even considering Petitioner's *pro se* status, the Court declines to do so
20　here.  *Brown v. Roe*, 279 F.3d 742 (9th Cir. 2002).

21　　　　Second, and alternatively, Petitioner's argument fails on the merits.  As
22　Respondents correctly note, Petitioner "does not explain the unconstitutional nature of the
23　purported impediment or how the malfunctioning of an application on his electronic tablet
24　was caused by the State."  (Doc. 30 at 3.)  Additionally, with respect to the COVID
25　lockdown, Petitioner seems to acknowledge that he was still given access to legal resources
26　during the lockdown—he simply complains that his "times" of access were "for less than
27　one hour" each.  (Doc. 29 at 4.)  Petitioner cites no authority, and the Court is aware of
28　none, holding that such limitations could qualify under § 2254(d)(1)(B) as state action that

serves as an unlawful impediment to the filing of a habeas application. Additionally, Petitioner does not explain with any specificity why the lockdown prevented him from filing his Petition, given that it did not go into effect until nearly four months after his state-court conviction became final (finality date of April 9, 2020, alleged lockdown date of August 1, 2020) and that he did not file the Petition until more than four months after the lockdown ended (alleged end date of June 1, 2021, Petition placed in the prison mail on October 12, 2021). Under these circumstances, Petitioner cannot rely on § 2254(d)(1)(B) to postpone the start date of AEDPA's limitations period. *See, e.g., Vanderark v. Greene*, 2021 WL 2228059, *2-3 (C.D. Ill. 2021) ("Petitioner argues that the Western Illinois Correctional Center was on lockdown due to the COVID-19 pandemic and he was denied access to the law library where his legal documents were stored and was unable to do legal research between March 2020 and November 2020. As a result, Petitioner claims this State action impeded his ability to timely file his Petition. While there is no definition for what constitutes an 'impediment' for purposes of § 2244(d)(1)(B), the Seventh Circuit has held that 'the plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition.' Here, the restrictions placed on Petitioner due to the pandemic did not prevent him from timely filing his Petition and § 2244(d)(1)(B) does not apply to this case."); *Mack v. Alves*, 578 F. Supp. 3d 154, 157 (D. Mass. 2021) ("[T]he petitioner has not demonstrated that the restrictions resulting from the pandemic 'prevented' him from filing a timely application for habeas relief [for purposes of § 2244(d)(1)(B)]. . . . Petitioner provides no explanation, for example, as to why he was unable to file his petition during the ten months after the SJC affirmed his convictions and before the onset of the pandemic restrictions. Nor does he contend that he made any attempt to mitigate the effect of the alleged impediment by attempting to work around it. The petitioner has therefore failed to show that state action thwarted his timely filing.").

As for Petitioner's objections regarding statutory tolling (Doc. 29 at 5-6), the Court finds no error in the R&R's analysis. Regardless of whether Petitioner could have filed another PCR claim following the rejection of his delayed direct appeal, he did not attempt

to do so.

As for Petitioner's objections regarding equitable tolling (Doc. 29 at 6-7), which raise claims of restricted access to trial transcripts and the prison law library, ineffective assistance (and deception) regarding the notice of appeal, and heavy medication, they fail for the reasons stated in Respondents' response (Doc. 30 at 4-5). This is simply not a case involving the sort of extraordinary circumstances that might justify equitable tolling.

As for Petitioner's objections regarding actual innocence (Doc. 29 at 1-2, 7-9), the Court again finds no error in the R&R's careful analysis and agrees with Respondents' arguments in response (Doc. 30 at 5).

Finally, as for the pending motions, Petitioner does not develop any reasoned argument as to why the R&R's analysis is incorrect—he simply asserts in conclusory fashion that "All pending motions should be granted" (Doc. 29 at 9)—and the Court concludes that the R&R's analysis is, in fact, correct.

Accordingly, **IT IS ORDERED** that:

1. Petitioner's objections to the R&R (Doc. 29) are **overruled**.

2. The R&R (Doc. 18) is **accepted**.

3. The Petition (Doc. 1) is **dismissed with prejudice**.

4. Petitioner's motion for release from custody (Doc. 7) is **denied**.

5. Petitioner's motion for legal determination regarding default (Doc. 15) is **denied**.

6. A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

7. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 30th day of August, 2022.

Dominic W. Lanza
United States District Judge